**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELE TANTILLO, | CIVIL ACTION NO. 12-511 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| CITIFINANCIAL RETAIL SERVICES, INC., et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiff, Michele Tantillo, brings this action against the defendants, Citibank, N.A., sued here as CitiFinancial Retail Services, Inc. ("Citi") and Equifax Information Services, L.L.C. (See generally dkt. entry no. 1, Compl.)  Insofar as the action concerns Citi, Tantillo asserts that Citi violated her rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("the FCRA").  (See id. at ¶¶ 1, 5, 15-16, 19, 21, 23, 34-39.)

Citi, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("the FAA"), now moves for two forms of relief, i.e., to: (1) compel arbitration of the dispute underlying the claim raised against Citi; and (2) stay the action while the parties proceed with such arbitration.  (See dkt. entry no. 20, Citi Mot.; dkt. entry no. 20-1, Citi Br. in Supp. at 5-19.)  Tantillo opposes the Motion.  (See generally dkt. entry no. 21, Tantillo Opp'n Br.)

The Court has considered the Motion on the papers and without oral argument.  See L.Civ.R. 78.1(b).  For the reasons that follow, the Court will grant the Motion.

## I.    STANDARD OF REVIEW

The Court reviews a motion to compel arbitration under the same standard applied to motions for summary judgment.  See Quilloin v. Tenet Healthsys. Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 n.9 (3d Cir. 1980).  The Third Circuit Court of Appeals has explained:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect.  If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury.  Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.

Par-Knit Mills, 636 F.2d at 54.

A motion to compel arbitration will thus be granted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); see Quilloin, 673 F.3d at 228.  Furthermore, "in reviewing the record, we are required to view the facts and draw inferences in the light most favorable to the nonmoving party."  Quilloin, 673 F.3d at 228 (citation omitted) (internal quotation marks omitted).

2

It appears that Citi bears the burden of showing that Tantillo executed an agreement to arbitrate.  See Schwartz v. Comcast Corp., 256 Fed.Appx. 515, 519 (3d Cir. 2007); Brisco v. Schreiber, No. 06-132, 2010 WL 997379, at *1 (D.V.I. Mar. 16, 2010).  It also appears that such agreements are presumptively valid and enforceable.  See 9 U.S.C. § 2; see also Brokers' Servs. Mktg. Grp. v. Cellco P'ship, No. 10-3973, 2012 WL 1048423, at *2 (D.N.J. Mar. 28, 2012) ("[S]uch agreements are presumptively enforceable.").  It thus appears that Tantillo bears the burden of proving that any such agreement is invalid.  See AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1746 (2011); Quilloin, 673 F.3d at 228-29.

## II.   APPLICATION OF LOCAL CIVIL RULE 56.1

Local Civil Rule ("Local Rule") 56.1(a), a companion to Federal Rule of Civil Procedure 56, (1) requires parties to present argument by reference to the materials in the record, and (2) where a non-movant fails to present an argument by reference to the record, allows the Court to deem the movant's factual assertions undisputed.  See Fed.R.Civ.P. 56(c), (e)(2); Carita v. Mon Cheri Bridals, LLC, No. 10-2517, 2012 WL 3638697, at *1-2 (D.N.J. Aug. 22, 2012).  In pertinent part, Local Rule 56.1(a) provides that:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue . . . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's

3

statement, <u>indicating agreement or disagreement and, if</u>
<u>not agreed, stating each material fact in dispute and</u>
<u>citing to the affidavits and other documents submitted</u>
<u>in connection with the motion</u>; any material fact not
disputed shall be deemed undisputed for purposes of the
summary judgment motion.

L.Civ.R. 56.1(a) (emphasis added).

A movant's statement of facts and a non-movant's related
response serve a vital purpose by identifying whether material
facts are truly in dispute.  See <u>Am. Plaza, LLC v. Marbo Cross</u>
<u>Shop, LLC</u>, No. 08-5963, 2010 WL 455349, at *2 (D.N.J. Feb. 3,
2010); see also <u>RRCI Constructors, LLC v. Charlie's/Diamond Ready</u>
<u>Mix, Inc.</u>, No. 07-147, 2009 WL 799660, at *1 n.1 (D.V.I. Mar. 24,
2009) (applying D.V.I. Local Rule of Civil Procedure 56.1 to a
motion to compel arbitration).  Local Rule 56.1(a) thus puts the
onus on the parties, rather than the Court, to identify evidence of
record that supports their respective arguments.  See <u>Baker v.</u>
<u>Hartford Life Ins. Co.</u>, No. 08-6382, 2010 WL 2179150, at *2 n.1
(D.N.J. May 28, 2010) ("It is not the Court's responsibility to
comb the record on behalf of Plaintiff's counsel."), <u>aff'd</u>, 440
Fed.Appx. 66 (3d Cir. 2011).  "Given the vital purpose that such
rules serve, litigants ignore them at their peril." <u>McCann v. Unum</u>
<u>Provident</u>, No. 11-3241, 2013 WL 396182, at *3 (D.N.J. Jan. 31,
2013) (quoting <u>Cabán Hernández v. Philip Morris USA, Inc.</u>, 486 F.3d
1, 7 (1st Cir. 2007)).

4

Citi, pursuant to Local Rule 56.1(a), filed a statement of facts in support of the Motion.  (See generally dkt. entry no. 20-10, Citi Statement of Material Facts ("Citi SOF").)  Tantillo filed a response to the Citi SOF, indicating disagreement with the facts recited in paragraphs 4, 5, 6, 8, 9, 10, 11, 12, and 13 of the Citi SOF ("Paragraphs at Issue").  (See dkt. entry no. 21, Tantillo Response to Citi SOF.)  But, as the Court noted on December 19, 2012, that response was deficient; Tantillo failed to state which material facts were in dispute, and failed to cite to the affidavits and other documents submitted in connection with the Motion.  (See id.; dkt. entry no. 22, 12-19-12 Order at 1-2.)

The Court, acting in the interests of justice, identified the Paragraphs at Issue, referred Tantillo to Local Rule 56.1(a), and extended the deadlines associated with the Motion.  (See 12-19-12 Order at 1-3.)  The Court explicitly instructed Tantillo to file a "new and proper" response to the Citi SOF by January 8, 2013.  (Id. at 3 (emphasis added).)  And the Court notified Tantillo that failure to file such a response would result in deemed admission of the facts recited in the Paragraphs at Issue.  (See id.)

Tantillo filed a new response to the Citi SOF on 12-19-12, less than one hour after the 12-19-12 Order was entered on the docket.  (See generally dkt. entry no. 23, 2d Tantillo Response to Citi SOF.)  This response to the Citi SOF is, in all material

respects, identical to the original; it thus suffers from the same deficiencies that rendered the original response improper. (Compare id. at Paragraphs at Issue, with Tantillo Response to Citi SOF at Paragraphs at Issue.)  Tantillo, through this response, has again failed to demonstrate the existence of material, disputed facts by reference to the record.  (See 2d Tantillo Response to Citi SOF at Paragraphs at Issue.)  See Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1215-16 (3d Cir. 1988).

Citi now argues, by reference to Local Rule 56.1(a) and the 12-19-12 Order, that the Court should deem the facts recited in the Paragraphs at Issue to be admitted.  (See dkt. entry no. 24, Citi Reply Br. at 13-14.)  The Court agrees.  Tantillo elsewhere demonstrated that she understood the obligations arising under Local Rule 56.1(a).  (See dkt. entry no. 23-1, Tantillo Supp. SOF at 1 (submitted "pursuant to Local Civil Rule 56.1(a)" and supported by citations to evidence of record).)  Nevertheless, she twice failed to demonstrate the existence of genuine disputes of material fact by reference to the record.  (See Tantillo Response to Citi SOF at Paragraphs at Issue; 2d Tantillo Response to Citi SOF at Paragraphs at Issue.)  Her repeated failure to reference the record demonstrates that there is no reason to disbelieve the statements of fact contained in the Paragraphs at Issue.  See Healy, 860 F.2d at 1215-16.

The Court will thus deem the facts recited in the Paragraphs at Issue to be undisputed, and incorporate them into the following findings of fact.

### III. FINDINGS OF FACT

This action rises from Tantillo's purchase of furniture from retailer Ashley Furniture HomeStore ("Ashley Furniture") on October 27, 2007.  (See dkt. entry no. 21-1, Tantillo Cert. at ¶¶ 1-3; Citi SOF at ¶ 1; 2d Tantillo Response to Citi SOF at ¶ 1; dkt. entry no. 20-2, Nimer Decl., Ex. B, Sales Order.)  It appears that Ashley Furniture employees informed Tantillo that she could finance her purchase with a line of credit, and submitted an application on her behalf to "an unknown company."  (See Tantillo Cert. at ¶¶ 3-6.) That company denied Tantillo's application.  (See id. at ¶ 7.)

Ashley Furniture employees then apparently informed Tantillo that she could apply elsewhere for credit.  (See id. at ¶ 8.) Tantillo thus executed a one-page application for a line of credit ("the Credit Application"), which Ashley Furniture submitted to the Citifinancial Retail Services Division of Citicorp Trust Bank, fsb ("Citicorp").  (See Citi SOF at ¶ 2; 2d Tantillo Response to Citi SOF at ¶ 2; Nimer Decl., Ex. A, Credit Application.)  The Credit Application provides, inter alia:

> **Notices to Applicant and Co-Applicant: . . . 4. If this application is approved by [Citicorp], you agree to all of the terms and conditions of the attached agreement (Form 23522-BB Ashley Furniture App/Agmt 23.50% (09/06))**

7

**("the Agreement"), <u>which are incorporated herein by reference</u>.** 5. Do not sign this application before you read the Agreement. You acknowledge receipt of the Agreement before making any purchases under the agreement. . . . **7. Paragraph 27 of the Agreement contains provisions requiring arbitration of various claims and controversies.**

(Credit Application at 1 (bold typeface in original) (emphasis added).)  Tantillo signed and dated the Credit Application just below the "Notices to Applicant".  (<u>See</u> <u>id.</u>)

The Agreement contains several provisions that bear upon the resolution of the Motion.  For example, it defines the class of "claims, disputes, and controversies" that are subject to arbitration.  (<u>See</u> Nimer Decl., Ex. C, Agreement at ¶ 27 ("the Arbitration Provision").)  The Arbitration Provision applies to:

all claims, disputes, or controversies between you and us . . . ("Claim" or "Claims"), directly or indirectly based upon, relating to, arising under, arising out of or in connection with your Account, this Agreement or the relationship between you and us . . ., and regardless of the legal theory involved, shall be resolved by binding arbitration.  This includes (but is not limited to) any Claims relating to services that we or our affiliates offer in connection with your Account or this Agreement; Claims for any violation of federal, state or local statute, rule, regulation or ordinance; . . . or any Claims involving or against any of our debt cancellation plan administrators, affiliates, successors or assigns and our or their officers, employees or agents.  The Claims subject to this arbitration provision include but are not limited to any Claims that arose or arise in the past, present or future, including Claims that arose before you opened your Account[.]

(<u>Id.</u> (bold typeface omitted).)  The Arbitration Provision also provides that it "shall survive . . . any transfer, sale or assignment of all, any part of or any rights under your Account, any sales slip or this Agreement." (<u>Id.</u> (bold typeface omitted).)[1]

The Agreement elsewhere provides that "[t]his Agreement and your Account are governed by federal law and applicable Delaware law, whether or not you live in Delaware and whether or not your Account is used in or outside Delaware." (See <u>id.</u> at ¶ 26 ("the Choice of Law Provision").)  And it provides that the Arbitration Provision is governed by the FAA and shall be interpreted in the broadest manner permitted by law. (See <u>id.</u> at ¶ 27 (bold typeface omitted).)

Citicorp approved the Credit Application, and Tantillo used the related line of credit to finance her Ashley Furniture purchase.  (<u>See</u> Citi SOF at ¶ 3; 2d Response to Citi SOF at ¶ 3; Tantillo Supp. SOF at ¶ 7; dkt. entry no. 24-1, Citi Response to Tantillo Supp. SOF at ¶ 7.)  Tantillo later received a credit card from Citicorp, which she did not further use. (<u>See</u> Tantillo Supp. SOF at ¶ 10; Citi Response to Tantillo Supp. SOF at ¶ 10; Tantillo Cert. at ¶ 11.)

---

[1] This clause is relevant because Citicorp later merged into and became part of Citi. (<u>See</u> Citi SOF at ¶ 9 (deemed admitted).)

Tantillo acknowledges that she read and signed the Credit Application.  (See Tantillo Cert. at ¶¶ 8, 10; Tantillo Supp. SOF at ¶ 10.)  But Tantillo asserts that she did not receive the Agreement, and she further asserts that, "[a]fter reading the one page credit application, I did not think that if I had a problem with . . . my credit that I wasn't able to take . . . [Citi] to Court."  (Tantillo Cert. at ¶ 10.)

### IV.  ANALYSIS

Citi argues pursuant to the Credit Application, Arbitration Provision, and FAA that the Court should compel Tantillo to arbitrate the claim raised against Citi and stay the action.  (See Citi Br. in Supp. at 5-19; Citi Reply Br. at 3-8.)  Tantillo raises three arguments in opposition.  First, she argues that the Arbitration Provision is invalid because the parties failed to reach either a "consensual understanding" or a "meeting of the minds".  (See id. at 8-9.)  Second, she argues that the statements concerning arbitration in the Credit Application (as distinguished from the Agreement) are ambiguous and, therefore, unenforceable.  (See Tantillo Opp'n Br. at 9-12.)  Finally, and in the alternative, she argues that the Credit Application and Agreement are invalid because, when read together as a single contract, they comprise an unconscionable contract of adhesion.  (See id. at 12-13.)

10

A.    **The FAA**

The Motion concerns the arbitrability of Tantillo's claim against Citi and thus is governed by the FAA.  See Quilloin, 673 F.3d at 228; Khan v. Dell, Inc., 669 F.3d 350, 354 (3d Cir. 2012). The FAA manifests "a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); see also AT&T Mobility, 131 S.Ct. at 1745; Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010) (FAA establishes "a strong federal policy in favor of the resolution of disputes through arbitration.").  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

A district court resolving a motion to compel arbitration "must be satisfied that the parties entered into a valid arbitration agreement." Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007) (citation omitted).  Accordingly, the Court must determine whether there was an agreement to arbitrate and, if so, whether the agreement to arbitrate was valid.  See id.  If the Court determines that the parties entered into a valid agreement to

arbitrate, "the merits of the controversy are left for disposition to the arbitrator."  Id.

A plaintiff may argue that an arbitration clause is invalid and thus unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract", such as unconscionability.  AT&T Mobility, 131 S.Ct. at 1746 (citations omitted) (construing the FAA as codified at 9 U.S.C. § 2); see also Quilloin, 673 F.3d at 228-29.  But an arbitration provision, in this context, is severable from the remainder of the contract.  See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446 (2006).  Accordingly, "to defeat Defendant's Motion to Compel Arbitration, Plaintiff must show that the arbitration agreement itself, and not the contract in general, is unconscionable and, therefore, unenforceable."  Richardson v. Citigroup, No. 12-485, 2012 WL 3590899, *3 (D. Colo. July 25, 2012) (Magistrate Judge Report & Recommendation), adopted by Dist. Ct., 2012 WL 3590897 (Aug. 21, 2012); see Buckeye Check Cashing, 546 U.S. at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); SBRMCOA, LLC v. Bayside Resort, Inc., No. 07-2436, 2013 WL 491254, at *3 (3d Cir. Feb. 11, 2013) ("[I]f a contract contains an arbitration clause, challenges to the validity of the contract as a whole are for the arbitrator to decide.").

**B.   Choice of Law Rules Relating to the Validity Inquiry**

The validity of an arbitration agreement is determined by reference to general principles of state contract law.  See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Quilloin, 673 F.3d at 230 ("We generally apply state contract principles to determine whether an arbitration agreement is unconscionable.").  Accordingly, the Court must as a threshold matter determine which state's contract principles control the validity inquiry.  See First Options of Chi., 514 U.S. at 944; Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 621-24 (3d Cir. 2009).  (See also dkt. entry no. 17, 11-28-12 Order at 2-3 (noting need to resolve threshold choice of law issues).)

Citi, relying on the Choice of Law Provision, argues that Delaware law controls the Court's validity inquiry.  (See Citi Br. in Supp. at 8-11.)[2]  Tantillo disagrees.  She argues that the Choice of Law Provision is invalid because the parties did not reach a either a consensual understanding or a meeting of the minds regarding any term contained in the Agreement.  (See Tantillo Opp'n Br. at 9.)  She also appears to argue that New Jersey law controls the Court's validity inquiry.  (See Tantillo Opp'n Br. at 10-11.)

The Court has reviewed the parties' arguments, and now concludes that New Jersey choice of law rules should govern this

---

[2] Citi also notes that application of New Jersey law would produce the same result.  (See id. at 11-18.)

action.  See Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429

(3d Cir. 1982) ("[A] federal court whose jurisdiction over a state

claim is based . . . on pendency to a federal claim . . . must

apply the conflicts of law principles of the forum state."); Zavala

v. Wal-Mart Stores, Inc., 393 F.Supp.2d 295, 333 (D.N.J. 2005),

aff'd, 691 F.3d 527 (3d Cir. 2012).  New Jersey choice of law rules

provide that "[w]here an examination of the various state laws lead

to the same outcome--thereby creating a 'false conflict'--the

conflict of law rules of this state permit this Court to resolve

the case without choosing between the laws of various states."

Zavala, 393 F.Supp.2d at 333.

Citi argues that the laws of New Jersey and Delaware, as

applied to this action, lead to the same outcome.  (See Citi Br. in

Supp. at 8-18; Citi Reply Br. at 5, 6-8.)  The Court has reviewed

the relevant contract laws of both states, and agrees.[3]  Delaware

law concerning the formation and validity of arbitration agreements

accords with New Jersey law.[4]  The Court will therefore resolve the

case without making a choice of law determination, and will simply

---

[3] Accordingly, the Court will not analyze or apply the Choice
of Law Provision to the Motion.

[4] See, e.g., Wells v. Merit Life Ins. Co., 671 F.Supp.2d 570,
573-75 (D. Del. 2009) (discussing Delaware law concerning contract
formation and invalidity based on unconscionability); Scrivner v.
ACE USA, No. 07-1329, 2007 WL 4124497, at *2 (E.D. Pa. Nov. 20,
2007) (applying and discussing Delaware law concerning contract
formation, including reference of outside terms by incorporation).

apply the law of New Jersey, the forum state.  See Zavala, 393
F.Supp.2d at 333.[5]

## C.   Discussion

     The Court, as noted above, must resolve two questions, i.e.,
whether: (1) there was an agreement to arbitrate, and (2) such
agreement was valid.  See Gay, 511 F.3d at 386.  The first question
is readily answered.  Tantillo does not dispute the existence of
either the arbitration term in the Credit Agreement or the

_____

     [5] This action invokes federal question jurisdiction.  (See
Compl. at ¶¶ 1-2 (invoking 28 U.S.C. § 1331, pursuant to the
FCRA).)  At least two courts in this circuit have determined in
actions invoking federal question jurisdiction that "federal
choice-of-law principles" apply.  See, e.g., S.E.C. v. Infinity
Grp. Co., 27 F.Supp.2d 559, 564 (E.D. Pa. 1998); Pfizer v. Elan
Pharma. Research Corp., 812 F.Supp. 1352, 1359-60 (D. Del. 1993).
Those courts cull such principles from the RESTATEMENT (SECOND) OF
CONFLICTS OF LAW ("the Restatement").  See Infinity Grp., 27 F.Supp.2d
at 564; Pfizer, 812 F.Supp. at 1360.
     The Third Circuit Court of Appeals has recognized a need for
choice of law principles in actions invoking 28 U.S.C. § 1331.  See
Gluck v. Unisys Corp., 960 F.2d 1168, 1179 n.8 (3d Cir. 1992).
Several other Courts of Appeals have similarly recognized this
need.  See, e.g., In re W. United Nurseries Inc., 338 Fed.Appx.
706, 708 (9th Cir. 2009); Bhd. of Locomotive Eng'rs v. Springfield
Terminal Ry. Co., 210 F.3d 18, 25-26 (1st Cir. 2000); Wells Fargo
Asia Ltd. v. Citibank, N.A., 936 F.2d 723, 726 (2d Cir. 1991).  And
several of those Courts of Appeals have drawn such "federal common
law" principles from the Restatement.  See, e.g., United Nurseries,
338 Fed.Appx. at 708; Schoenberg v. Exportadora de Sal, S.A. de
C.V., 930 F.2d 777, 782-83 (9th Cir. 1991); Edelmann v. Chase
Manhattan Bank, N.A., 861 F.2d 1291, 1294 (1st Cir. 1988).
     Citi refers to the "federal common law" in its brief.  (See
Citi Br. in Supp. at 9 n.2)  This Court nevertheless declines the
opportunity to adopt, create, or otherwise further develop of such
"federal common law".  Cf. Wood v. Palisades Collection, LLC, No.
09-4627, 2010 WL 2950323, at *4 (D.N.J. July 22, 2010).  The Court
instead relies on New Jersey law, for the reasons expressed above.

Arbitration Provision.  (<u>See generally</u> Tantillo Opp'n Br.; <u>see also</u> Credit Application; Arbitration Provision.)  She instead disputes their validity.  (<u>See</u> Tantillo Opp'n Br. at 8-13.)

The Court will examine each of Tantillo's arguments.  But the Court, as noted above, begins with the presumption that the Arbitration Provision is enforceable.  <u>See</u> 9 U.S.C. § 2; <u>Brokers' Servs. Mktg. Grp.</u>, 2012 WL 1048423, at *2.

1.   **Whether Tantillo and Citi Reached a "Consensual Understanding" or "Meeting of the Minds"**

Tantillo first argues that "the documents presented to the plaintiff show that there was no consensual understanding of what was to be arbitrated in the transaction at hand.  The plaintiff was only given a one page credit application in which there was a general reference made to an '<u>Agreement</u>,' and <u>said agreement</u> was never presented to the plaintiff." (Tantillo Opp'n Br. at 8 (emphasis added).)  She continues:

> Perhaps she was only asked to sign the credit application and was not given <u>the agreement</u> because that is how the Ashley sales team was trained?  Perhaps the sales team was not going to give <u>the entire agreement</u> to the plaintiff until she was actually approved and it was binding? . . .  Ultimately it is not for the plaintiff to show why she was not given <u>the agreement</u> to review before signing the credit application. . . .

(<u>Id.</u> (emphasis added).)

It appears that Tantillo argues that the entire Agreement, as distinguished from only that portion of the Agreement concerning

arbitration -- i.e., the Arbitration Provision -- is invalid based on a lack of mutual understanding. (See id. (referencing "the agreement" and "the entire agreement").) The Court cannot consider this argument. A challenge concerning the validity of the entire Agreement, as distinguished from a challenge to the validity of only the Arbitration Provision, must be considered "by the arbitrator in the first instance." Buckeye Check Cashing, 546 U.S. at 445-46; see also SBRMCOA, 2013 WL 491254, at *3; Quilloin, 673 F.3d at 229; Richardson, 2012 WL 3590899, at *3.

Even if the Court construed Tantillo's argument to only concern the Arbitration Provision, her argument would fail. The New Jersey Superior Court dealt with a nearly identical action in 2006. See Daley v. Int'l Furniture, No. L-7503-05, 2006 N.J. Super. Unpub. LEXIS 2967, at *2-4 (N.J. Super. Sept. 22, 2006). As recited by the Superior Court, the plaintiff, Daley, purchased furniture from a retail establishment and applied to the defendant "CitiFinancial" for a related line of credit. See id. at *1-2, 6. The credit application stated, inter alia, that "THE ATTACHED AGREEMENT CONTAINS PROVISIONS REQUIRING ARBITRATION OF VARIOUS CLAIMS AND CONTROVERSIES." Id. at *3 (bold typeface omitted). It also stated, "BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COPY OF THE AGREEMENT BEFORE MAKING ANY PURCHASES UNDER THIS ACCOUNT." Id.

17

Daley raised one or more claims against CitiFinancial, which moved to compel arbitration of the disputes underlying those claims.  See id. at *1.  Daley opposed CitiFinancial's motion and argued that the arbitration provision in "THE ATTACHED AGREEMENT" was invalid because she had not received it.  The Superior Court disagreed; it found that her argument lacked "any substantiation [or] merit."  Id.  In pertinent part, the Superior Court concluded that "the 'face sheet' [of the CitiFinancial credit application] provided adequate notification to [Daley] that she was dealing with CitiFinancial and that her claims were subject to an attached arbitration provision."  Id. at *2.  That court thus concluded that Daley had adequate notice "of the existence of the additional documents" and found it unnecessary to determine whether Daley actually received the papers containing the arbitration provision. Id. at *1-2.

The Third Circuit Court of Appeals reached a similar decision in Schwartz.  There, the plaintiff, Schwartz, subscribed to cable internet services provided by the defendant, Comcast Corp. ("Comcast").  See 256 Fed.Appx. at 516.  Schwartz contended that he did not received a copy of Comcast's "Subscriber Agreement", which contained an applicable arbitration provision.  See id. at 516-17. When Schwartz brought suit and raised claims against Comcast, and Comcast moved to arbitrate the disputes underlying those claims,

Schwartz argued that the arbitration provision at issue was invalid because he had not received the Subscriber Agreement.  See id. at 518.

The district court denied Comcast's motion, and Comcast appealed.  See id. at 516.  Upon review, the Third Circuit Court of Appeals reversed the district court's order and remanded the action for further proceedings, stating:

> Schwartz denies only that he received a copy of his subscription agreement. . . .  Whether or not Schwarz received a copy of the subscription agreement, he could not accept services he knew were being tendered on the basis of a subscription agreement without being bound by that agreement.  RESTATEMENT (SECOND) OF CONTRACTS § 23 (1981) ("[W]here an offer is contained in a writing, [a party] may, without reading the writing, manifest an assent to it and bind himself without knowing its terms. . . . [A]n offeror or offeree who should be aware of [the terms of a writing] may be bound in accordance with them if he manifests assent.").

Id. at 518.[6]

Tantillo, like Daley, signed an application for a line of credit and thereby acknowledged the existence of another document that contained an applicable arbitration provision.  (See Tantillo Cert. at ¶ 8 (acknowledging that Tantillo signed the Credit Application); Credit Application at 1 (referencing the "**the terms**

_____

[6] The Court recognizes that in Schwartz the Third Circuit Court of Appeals generally applied Pennsylvania law.  See Schwartz, 256 Fed.Appx. at 518.  But that court's decision, insofar as this Court relies on it, rests on the general legal principles embodied in the RESTATEMENT (SECOND) OF CONTRACTS.  See id.

**and conditions of the attached agreement (Form 23522-BB Ashley Furniture App/Agmt 23.50% (09/06)) ("the Agreement"), which are incorporated herein by reference**" (bold typeface in original).) Tantillo thus, like Daley, had adequate notice of the existence of additional documents.  See <u>Daley</u>, 2006 N.J. Super. Unpub. LEXIS 2967, at *2-3.  Furthermore, after Citi approved the Credit Application, Tantillo used the related line of credit to purchase furniture.  By using the line of credit, she manifested assent and bound herself to the Arbitration Provision.  See <u>Schwartz</u>, 256 Fed.Appx. at 518.

The Court thus concludes that Tantillo and Citi reached a meeting of the minds regarding the Arbitration Provision, and will proceed accordingly.

**2.   Whether the Terms in the Credit Agreement that Concern Arbitration are too Ambiguous to be Valid and Enforceable**

Tantillo contends that she "can only be bound by what she read and signed in the credit application." (Tantillo Opp'n Br. at 9.) She thus argues that the Credit Application, which "requir[ed] arbitration of various claims and controversies", is too ambiguous to be enforced.  (See <u>id.</u> at 11; Credit Application at 1.)

The Court earlier concluded that Tantillo acknowledged the existence of the Arbitration Provision by signing the Credit Application.  The Court also concluded that Tantillo, by signing using the Citi line of credit, manifested an assent to bind and

actually bound herself to the Arbitration Provision.  In light of these conclusions, Tantillo's argument is misplaced.  The Credit Agreement language concerning the "claims and controversies" subject to arbitration cannot be read in a vacuum; instead, it must be read in tandem with the Arbitration Provision.  Because the Arbitration Provision clearly and unambiguously defines two groups of claims and controversies, i.e.: (1) those subject to arbitration; and (2) those exempt from arbitration, Tantillo's argument lacks merit.  (See Arbitration Provision.)

**3.   Whether the Agreement is Unenforceable as an Unconscionable Contract of Adhesion**

Tantillo's final argument suggests that the Arbitration Provision is unenforceable because the Arbitration Provision was part of the Agreement, and the Agreement was part of an unconscionable contract of adhesion.  (See Tantillo Opp'n Br. at 12.)  Tantillo cites a recent decision of New Jersey Appellate Division, noting that "arbitration provisions are often embedded in contracts of adhesion."  (Id. (quoting NCAAP of Camden Cty. E. v. Foulke Mgmt. Corp., 24 A.3d 777, 790-791 (N.J. App. Div. 2011)).)

Tantillo, through this argument, again asks the Court to examine the validity of the entire contract.  For the reasons set forth above, the Court cannot entertain her argument.  See Buckeye Check Cashing, 546 U.S. at 445-46; SBRMCOA, 2013 WL 491254, at *3; Quilloin, 673 F.3d at 229; Richardson, 2012 WL 3590899, at *3.

21

**D.    Whether the Action Should be Stayed**

Citi urges the Court to stay the action while the parties proceed with arbitration.  (See Citi Br. in Supp. at 19.)  Because the FAA mandates that the Court grant such relief, the Court will stay the action.  See 9 U.S.C. § 3; Quilloin, 673 F.3d at 227 n.2 (noting that "a stay, rather than a dismissal, is the required course of action when compelling arbitration" (citation omitted)).

**V.    CONCLUSION**

The Court, for the reasons detailed above, concludes that Tantillo and Citi executed a valid arbitration agreement.  For good cause appearing, the Court will grant the Motion and enter a separate Order, directing Tantillo and Citi to proceed to arbitration under the terms set forth in the Arbitration Provision, staying the action, and administratively terminating the action.[7]

                              s/ Mary L. Cooper
                         **MARY L. COOPER**
                         United States District Judge


Date:     February 19, 2013

---

[7] An order administratively terminating an action is not the equivalent of a dismissal with prejudice.  See Delgrosso v. Spang & Co., 903 F.2d 234, 236 (3d Cir. 1990) (stating that administrative termination is not a final determination on the merits, as it "permits reinstatement," "contemplates the possibility of future proceedings," and "does not purport to end litigation on the merits").  Such an order is issued pursuant to the Court's inherent powers to control the docket and preserve judicial economy.  See Cargill v. State of N.J., Dept. of Educ., No. 09-6024, 2010 WL 4916717, at *2 (D.N.J. Nov. 24, 2010).